IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| TOBY KRISTOPHER PAYNE, Prison ID # 1720023, Plaintiff, v. SCOTT APPLETON, et al., Defendants. | ) ) ) ) ) ) ) ) ) ) | No. 1:18-CV-0063-BL |

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U. S. C. § 1983, Plaintiff sues two prison officials or employees of the French M. Robertson Unit of the Texas Department of Criminal Justice for failing to in violation of the Americans with Disability Act ("ADA"); the Rehabilitation Act ("RA"); and the Eighth Amendment of the United States Constitution. *See* Compl. (doc. 1) at 4. The Court has granted Plaintiff permission to proceed with this case *in forma pauperis*. *See* PLRA Filing Fee Order (doc. 5). On May 1, 2018, the District Judge referred the case to the undersigned. *See* Order (doc. 7). Plaintiff thereafter consented to have a United States Magistrate Judge conduct any and all further proceedings in this case, including entry of a final judgment, in accordance with 28 U.S.C. § 636(c). *See* Consent to Proceed Before a United States Magistrate Judge (doc. 9).

In August 2018, the Court sent Plaintiff a Magistrate Judge's Questionnaire ("MJQ") to flesh out the factual and legal bases for his claims. *See* MJQ (doc. 10). Plaintiff timely responded to the MJQ. *See* Answers to MJQ (doc. 11).[1] After considering Plaintiff's complaint, the MJQ answers, other relevant filings, and the applicable law, the Court issues this Memorandum Opinion and Order finding that Plaintiff has stated no claim that survives summary dismissal and thus dismisses this action

---

[1] The answers to the MJQ constitute an amendment to the complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994). For ease of reference, the Court will cite to the answers as Answer 1, Answer 2, etc.

in its entirety.

## I. BACKGROUND[2]

On July 21, 2017, Plaintiff "was transferred from a psychiatric inpatient program at the William P. Clements Unit in Amarillo, Texas, called Chronic Mentally Ill (CMI) to general population [("GP")] as a custody level (G2), trustee level (Time Earning Level) S3 offender." Compl. at 5. Plaintiff alleges that he has "been diagnosed with schizoaffective disorder," which "is a combination of acute psychosis and bi-polar disorder that requires" medication every day. *Id.* Due to alleged treatment prior to his transfer that are not at issue in this litigation, Plaintiff arrived at the Robertson Unit on July 21, 2017, "apprehensive, angry, and frustrated," but "also relieved that that nightmare was over." *Id.* at 6. Plaintiff was assigned janitorial duties for the night shift. *See id.*

On August 1, 2017, after constant yelling with occasional vulgar language by an officer on night shift, Plaintiff "lost [his] cool" and vented his anger and frustrations towards the officer resulting in an incident report for threatening an officer. *Id.* Through the prison grievance process, Plaintiff sought to excuse his outburst by stating that (1) he "forgot to take [his] psych meds the morning prior to 8/1/17," (2) he "was still trying to get used to being back in GP from being in psychiatric ad-seg in the Chronically Mentally Ill program," and (3) on the evening of July 31, 2017, "no cold water was provided for the Janitors." *See* Step 1 Offender Grievance Form, attached as Doc. 2 to Compl.

Plaintiff commenced this civil action in April 2018. *See* Compl. The Court severed all claims from this action except for claims against Defendants Scott Appleton and Jessie Singh. *See* Order (doc. 6). He asserts claims under the ADA, RA, and the Eighth Amendment under the same set of

---

[2]The factual background is taken from Plaintiff's complaint and answers to the MJQ. When screening for failure to state a claim, the Court views Plaintiff's factual allegations in accordance with *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009).

facts. *See* Compl. at 4; Answers 2 and 3. His sole claim in this action is that he was placed "into a minimum custody general population environment without providing [him] with any type of transitional psychiatric treatment, counseling, or program." *See* Compl. at 5. He claims that, had he "received such treatment [or] counseling, it is quite likely that [he] would have handled the situation" with the night shift officer "in a more progressive manner." *Id.* He also briefly mentions that defendants "were required to counsel [him] prior to the disciplinary case being allowed to go to hearing and could have justified that it should be dismissed," but they failed to do so. *Id.*

With respect to the acts and omissions of the two named defendants, Plaintiff alleges that Mental Health Counselor Scott Appleton "failed to provide adequate psychological counseling when [Plaintiff] arrived from the CMI program at the Clements Unit in the form of transition counseling to help [Plaintiff] retrain [his] mind from living in an administrative segregation environment into a general population environment." Answer 5. He sues Psychiatrist Jessie Singh because he "is the person responsible for proper dispensation of psychiatric medications" and had he examined Plaintiff "right away" when Plaintiff arrived at the Robertson Unit, "he may have wanted to adjust my medication in order to calm [Plaintiff] down from a very apprehensive mental state." Answer 6. Plaintiff further states that Singh "may have also discovered that I was suicidal and treated [Plaintiff] for it," but he "failed to do so thereby putting [Plaintiff's] life in jeopardy." *See id.*

When asked to describe the physical injury, if any, that he sustained as a result of the alleged conduct of defendants, Plaintiff states that he "only seeks punitive damages for the lack of adequate psychological counseling and failure to communicate with the CMI team at the Clements Unit." Answer 4. He states that his "injury is emotional and adverse to [his] diagnosis of schizoaffective disorder." *See id.* In his complaint, Plaintiff seeks to recover costs, "possible attorney fees," and an unspecified award for damages, while also wanting the Court to erase or reverse his disciplinary case

#20170356150. Compl. at 5. However, contemporaneously with this Memorandum Opinion and Order, the Court has granted Plaintiff's requested amendment that his requested relief be limited to nominal and punitive damages. *See* Pl.'s Mot. Leave Am. Compl. (doc. 22).

Given these facts and background information, the Court now conducts the preliminary screening of this action as contemplated by 28 U.S.C. §§ 1915(e)(2) and 1915A.

## II. SCREENING

Plaintiff proceeds with this case *in forma pauperis*. Therefore, this action is subject to *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2)(B). In addition because he is a prisoner seeking redress from governmental entity or an officer or employee of such an entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A regardless of whether he proceeds *in forma pauperis*. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Both statutes provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court may find a claim frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law, furthermore, when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim lacks an arguable basis in fact, when it describes "fantastic or delusional scenarios." *Id.* at 327-28. A complaint fails to state a claim upon which relief may be granted, on the other hand, when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks

for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). A plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Iqbal*, 556 U.S. at 678 (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The alleged facts must "nudge" an asserted claim "across the line from conceivable to plausible" to avoid summary dismissal. *Id.* at 570.

In this case, Plaintiff sues two defendants for alleged violations of the ADA, RA, and the Eighth Amendment.

## A. Eighth Amendment Claim

Stated succinctly, Plaintiff asserts that each defendant failed to provide transitional counseling upon his arrival to the Robertson Unit and placement in the general population. Compl. at 4. It appears that Plaintiff alleges denial of proper medical care. The Eighth Amendment provides the proper analytical framework for denial-of-medical-care claims filed by convicted inmates "[w]hether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (citation omitted). It is well-established "that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation and internal quotation marks

omitted). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

Prison officials violate "the Eighth Amendment only when two requirements are met." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The courts consider (1) whether the alleged deprivation is "objectively, 'sufficiently serious'" such that the act or omission results "in the denial of 'the minimal civilized measure of life's necessities'" and (2) whether the official had a "sufficiently culpable state of mind" in acting or failing to act. *Id.* In other words, there must be an "objective exposure to a substantial risk of serious harm" and "prison officials acted or failed to act with deliberate indifference to that risk." *Gobert*, 463 F.3d 345-46. Both of these inquiries are fact intensive. *Garrett v. Thaler*, 560 F. App'x 375, 380 n.3 (5th Cir. 2014) (per curiam).

Prison officials are deliberately indifferent only when they know of the substantial risk of serious harm faced by the inmate and "disregards that risk by failing to take reasonable measures to abate it." *Gobert*, 463 F.3d at 346 (quoting *Farmer*, 511 U.S. at 834). "Deliberate indifference is an extremely high standard to meet." *Sanchez v. Young Cnty.*, 866 F.3d 274, 280 (5th Cir. 2017). As a matter of law, prison officials are not deliberately indifferent merely because they provide "[u]nsuccessful medical treatment," act negligently, or commit medical malpractice. *Gobert*, 463 F.3d at 346. Absent exceptional circumstances, furthermore, "a prisoner's disagreement with his medical treatment" does not constitute deliberate indifference. *Id.* Additionally, pursuit of further treatment or additional diagnostic techniques are matters of medical judgment that do not constitute cruel and unusual punishment under the Eighth Amendment. *Estelle*, 429 U.S. at 107.

"Deliberate indifference will often be a fact-laden question" which makes it difficult for the courts "to draw bright lines in such an inquiry." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 457 (5th

Cir. 1994). Nevertheless, deliberate indifference requires that the acts or failures to act of the prison officials constitute refusing to treat the prisoner, ignoring his complaints, intentionally treating the prisoner incorrectly, or engaging "in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346 (citation and internal quotation marks omitted).

Courts look at the circumstances as a whole when considering whether a prison official knows of a substantial risk of serious harm and responded with deliberate indifference. As alleged in this case, Plaintiff was discharged from a restrictive CMI program in one prison facility, transferred to the Robertson Unit, and placed in the general population – allegedly without transitional counseling. He provides a Step 2 Offender Grievance Form in which he stated that he "was discharged from CMI because [he] was deemed mentally stable" even though he formally protested that finding while at the Clements Unit. *See* Doc. 3 attached to Compl.

Based on allegations of prescribed medication, Plaintiff's mental diagnosis qualifies as a serious medical need. But Plaintiff makes no allegation that he sought transitional counseling from either defendant or that they refused to treat him, ignored medical complaints, intentionally treated him incorrectly, or engaged in any conduct that evinces a wanton disregard for any serious medical need. He instead merely complains that the two defendants should have provided him some transitional counseling. He speculates that such counseling may have helped him to better handle the situation with the night shift officer. Speculation, however, is not sufficient to state a claim upon which relief can be granted.

Under the facts alleged by Plaintiff that he did not receive transitional counseling thus causing an outburst resulting in discipline, the alleged deprivation of medical care does not appear to be objectively sufficiently serious so as to result in a denial of any minimal civilized measure of life's

necessities. Plaintiff was deemed mentally stable prior to being transferred to the Robertson Unit. That he disagrees with that assessment does not require prison officials to provide transitional counseling before placing him in the general prison population. Failing to provide transitional counseling does not appear to objectively expose Plaintiff to a substantial risk of serious harm. Courts may "appropriately dismiss claims for not involving a serious deprivation" before "reaching the state-of-mind issue." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).

Even if the Court were to deem Plaintiff's allegations adequate to satisfy the objective requirement of a sufficiently serious deprivation, his factual allegations are insufficient to state a claim that any defendant responded with deliberate indifference. His allegations simply fail to satisfy the extremely high standard for deliberate indifference. The Court cannot find on the facts alleged that any defendant refused to treat Plaintiff, ignored his medical complaints, intentionally treated him incorrectly, or engaged in any similar conduct that clearly evinces a wanton disregard for a serious medical need. When a prisoner has been deemed mentally stable, it does not constitute a constitutional violation to place that prisoner into the general prison population without providing any transitional counseling. Plaintiff's perceived need amounts to no more than a disagreement with medical treatment. That does not rise to a constitutional violation.

Plaintiff fares no better if the Court were to delve into the specific allegations against the named defendants. First, he provides no different factual allegations against Defendant Appleton. And his specific allegations against Psychiatrist Singh merely adds speculation that Singh may have adjusted his medication had he examined Plaintiff upon his arrival at the Robertson Unit. While he also states that Singh may have discovered Plaintiff to be suicidal, that statement is purely speculative, conclusory, and irrelevant to any issue in this case. Plaintiff makes no specific allegation that either defendant refused to treat him, ignored his medical complaints, intentionally treated him incorrectly,

or engaged in any similar conduct that clearly evinces a wanton disregard for a serious medical need.

For all of these reasons, Plaintiff's denial-of-medical-care claim fails to state a claim upon which relief can be granted.

## B. ADA and RA Claims

Based on the same facts as his Eighth Amendment claim, Plaintiff asserts ADA and RA claims against each defendant. While Plaintiff does not identify the specific provisions of these acts, it appears that he alleges violations under Title II of the ADA and section 504 of the Rehabilitation Act.

"The ADA 'forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodation (Title III).'" *Jefferson v. Loftin*, No. 3:04-CV-1102, 2005 WL 4541891, at *6 (N.D. Tex. Mar. 16, 2005) (accepting recommendation of Mag. J.) (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001)). In pertinent part, Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, as codified in 29 U.S.C. § 794(a), Section 504 of the Rehabilitation Act provides in pertinent part that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." In general, Title II "tracks the language of Section 504" and, by enacting Title II, Congress intended to "extend the protections of the Rehabilitation Act to cover all programs of state or local governments, regardless of the receipt of federal financial assistance and that it work in the same manner as Section 504." *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) (citation and internal quotation marks omitted). Furthermore, "[j]urisprudence interpreting either section is applicable to both." *Id.*

9

"Title II of the ADA unambiguously extends to state prison inmates." *See Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 213 (1998). And while coverage under the RA is limited by the requirement of federal financial assistance, the two provisions are essentially coextensive. Nevertheless, neither provision provides for relief against any individual. *See Coker v. Dallas Cnty. Jail*, No. 3:05-CV-005-M-BH, 2009 WL 1953038, at *16 n.11 (N.D. Tex. Feb. 25, 2009) (recommendation of Mag. J. citing 42 U.S.C. § 12131), *accepted as modified by* 2009 WL 1953037 (N.D. Tex. July 6, 2009); *Meredith v. Nowak*, No. 06-2384, 2008 WL 4808905, at *4 (E.D. La. Oct. 31, 2008). They only "provide for relief against public entities." *Coker*, 2009 WL 1953038, at *16 n.11. Because Plaintiff does not sue any entity, his ADA and RA claims are legally frivolous.

Furthermore, to state a claim under either Title II or Section 504, Plaintiff must allege that he "(1) was a qualified individual with a disability, and (2) was excluded from participation in or denied the benefits of the services, programs, or activities of the [prison], or was otherwise subjected to discrimination, (3) because of his disability." *Wright v. Tex. Dep't of Crim. J.*, No. 7:13-CV-0116-O, 2013 WL 6578994, at *2 (N.D. Tex. Dec. 16, 2013). Although Plaintiff alleges that he is medically treated for a mental impairment, he has not alleged that he is a qualified individual with a disability, and even if the Court were to assume he satisfies that first element, his ADA and RA claims fail because he not alleged any exclusion or discrimination because of his disability. When a plaintiff "has failed to allege that he was discriminated against on the basis of disability in a major area of public life," he fails to state a plausible claim upon which relief can be granted under the ADA. *Jefferson*, 2005 WL 4541891, at *6. The same reasoning applies when the plaintiff asserts claims under the RA.

### C. Potential Claim Regarding Disciplinary Action

Plaintiff briefly mentions in his complaint that, prior to his disciplinary hearing, defendants were required to counsel him and that such counseling "could have justified" dismissal of the disci-

plinary charge against him. Compl. at 5. He also specifically requests that the Court erase or reverse his disciplinary case. *See id.* To the extent that Plaintiff pursues this as a claim in this action, the Court finds the claim conclusory. When the Court provided Plaintiff an opportunity to state all facts to support a claim against each individual defendant, he stated no additional facts to support any claim related to counseling him prior to the disciplinary hearing. Courts may properly dismiss conclusory claims under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim upon which relief can be granted. *See Biyiklioglu v. St. Tammany Par. Jail*, 708 F. App'x 200, 201 (5th Cir. 2018) (per curiam).

### III. LEAVE TO AMEND

In general, courts should provide pro se litigants an opportunity to amend before dismissing a complaint. *See Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009). Leave to amend is not required, however, when plaintiffs have already pled their "best case." *Id.* Whether to grant leave to amend is within the Court's sound discretion. *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). In this instance, the Court provided Plaintiff an opportunity to factually support his claims through his answers to the court questionnaire. More recently, it granted Plaintiff's proposed amendment to limit his requested relief to nominal and punitive damages. Based on these prior opportunities to support his claims, the Court finds that Plaintiff has pled his best case and that there is no basis to permit any further amendment.

### IV. CONCLUSION

After considering Plaintiff's complaint, his answers to the Court's questionnaire, other relevant filings, and the applicable law, the Court **DISMISSES** this action pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A as frivolous or for Plaintiff's failure to state a claim upon which relief may be granted. This dismissal will count as a "strike" or "prior occasion" within the meaning of 28 U.S.C.

§ 1915(g).³

IT IS SO ORDERED this 1st day of May, 2019.

_____
E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE

---

³Section 1915(g) is often referred to as the "three-strikes" provision and provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.